JUDGE SEIBEL

15 CV 03183

## UNITED STATES DISTRICT COURT
### DISTRICT OF SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GEORGE POTZNER, individually and on behalf of all others similarly situated, | Court File No. _____ |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT** |
| TOMMIE COPPER INC. | **JURY TRIAL DEMANDED** |
| Defendant. | |

Plaintiff George Potzner ("Plaintiff"), on behalf of himself and all others similarly situated, by his undersigned attorneys, makes the following allegations against Defendant Tommie Copper Inc. ("Defendant" or "Tommie Copper"), based upon the investigation of counsel, except as to the allegations pertaining specifically to Plaintiff that are based on personal knowledge.

### I. DEFENDANT'S UNFAIR AND DECEPTIVE PRACTICES

1. Defendant develops, manufactures, markets and sells "copper-infused" athletic apparel including compression sleeves, tops, bottoms, underwear, and socks. Defendant claims its copper-infused fabric "combin[es] sport, science and skin health benefits for improved mobility, performance and relief." According to Defendant, "The proprietary PRO+IONIC copper fabric releases ions, which may help reduce the oxidants in the body and is a natural, permanent anti-bacterial agent with skin benefits."[1]

---

[1] http://www.galls.com/tommie-copper-women-s-journey-recovery-compression-shorts#.VMkaK2jF8mM

2.      Defendant claims its "recovery line of compression sleeves and apparel . . . speeds joint and muscle recovery and offers rejuvenating relief from aches and pains naturally." Defendant also touts the benefits of copper as a "mineral long used to relieve joint and muscle pain." Defendant goes as far to state that its copper-infused garments have allowed "***Millions of people [to] overcome obstacles and achieve[] their dreams . . . .***"[2]

3.      Defendant seeks to induce reasonable consumers to form a connection between the purported health benefits of copper and its copper-infused fabric.

4.      Prior to purchasing Defendant's products, Plaintiff both heard and/or saw Defendant's representations that its copper-infused garments will speed recovery time and provide relief from joint and muscle pain.

5.      Since at least 2011, Defendant, in violation of New York and Iowa law, has maintained an unfair and deceptive practice whereby it has usurped good will and sales by unfair means at the expense of consumers like Plaintiff and the Class.  In sum, Defendant has deceived its "millions of customers" by (a) falsely advertising and representing the benefits of its copper-infused fabric and, at the same time, (b) pocketing the income from the sales based on these misrepresentations.

6.      Defendant's misrepresentations and improper statements are not mere puffery. Any consumer would consider the alleged benefits of Defendant's products in his or her purchase—especially when Defendant's target audience is physically active persons looking for recovery and pain relief.  In fact, Defendant's advertisement campaign is focused on these misrepresentations and the ***recovery*** of injured athletes who serve as "Ambassadors.[3]"

---

[2] https://www.youtube.com/watch?v=URJ28p6w9UY

[3] https://www.youtube.com/watch?v=jN8KQk1yxcU

7.     Defendant's statements stress the *science* utilized in its products and simply list facts, not adjectives, in describing its products' alleged benefits:





8.      Since Defendant began marketing its copper-infused garments in 2010, it has continuously made improper and untrue claims concerning the alleged benefits of wearing such products.  For instance, prior to launching its products, Defendant campaigned the benefits of copper to potential consumers via its Facebook page highlighting the pain relieving and other health benefits:



9.      Defendant's initial webpage provided the final link for consumers to make a reasonable conclusion based upon Defendant's statements that its copper-infused garments would provide the relief they sought:



10.     Defendant routinely asserts and promises that its copper-infused garments provide

relief for aches and pain for those consumers who purchase its premium-priced products.



11.    Additionally, Defendant asserted that its products would provide relief and pain for specific illnesses and diseases:



**Tommie Copper** Peg Stark, our leggings will be a substantial thickness to be able to be worn by both by men and women. You can wear them while running, working out, and sleeping. Kirkland Mason, the calf sleeves should help while you are on blood thinners as our products help to stimulate blood flow, decrease inflammation and increase mobility. Geri Lemoine Kelly, the gloves should help with your carpal tunnel and also stay tuned as we are coming out with a wrist band shortly that will alleviate pain from carpal tunnel syndrome. Sharon Snider Wilkinson, stay tuned for future contests that you will be eligible to enter. Thank you for your interest in our products and interest in entering our contest.

September 4, 2012 at 8:20am · 👍 1

12.    And, at the very least, Defendant implied that copper's alleged benefits have been recognized in the field of medicine for "thousands of years:"



13.     Based on information and belief, Defendant knew that its products' advertised benefits were false and misleading.  Specifically, Defendant knew or should have known that its copper-infused fabric did add not provide any health or skin benefits.

14.     On the other hand, Plaintiff did not know, and had no reason to know, that Defendant's copper-infused products were falsely marketed and sold.  Had Plaintiff known that Defendant's products were falsely marketed and sold, he would not have purchased the garment.

15.     Plaintiff brings this suit as a class action on behalf of all similarly purchasers of Defendant's copper-infused garments in order to recover the proceeds unlawfully obtained through Defendant's unfair and deceptive business practices, and for injunctive relief.

## II. THE TRUTH ON THE CLAIMED BENEFITS OF COPPER-INFUSED FABRIC

16.     Copper is an essential trace element required for human life.  A person's diet will typically provide enough copper to satisfy the daily recommendation.  Indeed, a copper deficiency is a rare diagnosis as other non-dietary sources expose a person to copper, including cookware, medications, drinking water and pesticides.

17.     Copper is typically absorbed through the stomach and thereafter transported to the liver.  It is then excreted through the liver and biliary tract to other tissues in the body.

18.     Copper in its simplest form, an inorganic salt, cannot permeate the skin.[4]  Scientific studies show that only when copper is combined a peptide is its permeability

---

[4] *Gaetke LM and Chow CK.* Copper toxicity, oxidative stress, and antioxidant nutrients. Toxicology 189: 147-163, 2003.

improved. And, even once it is combined with a peptide, it needs constant administration for typically more than twenty-four hours.[5]

19. The copper levels in a person's body remain stable or elevated when he or she is physically active.[6] Copper levels do not decrease as a result of strenuous exercise. One study showed that the serum copper was unaffected by acute exercise.[7]

20. Finally, Defendant's particular statements are contradicted by the scientific literature and studies. Specifically, each of the below claims are unsupported:

a. *Increases oxygen transportation:* Oxygen is used in helping convert foodstuffs to energy that the body can use, i.e., ATP. Copper's role in this process is as a cofactor for an enzyme (cytochrome c oxidase). However, there is no evidence to indicate that copper supplementation actually improves this process by increasing oxygen uptake or VO2max (maximal oxygen consumption, the primary index for oxygen utilization in the body). In fact, one study showed copper supplementation over the course of one year did not result in any change in VO2max.[8]

b. *Neutralizes free radicals:* Antioxidants are substances that reduce or 'neutralize' free radicals. Copper is not an antioxidant and only plays an indirect role in this process. Specifically, a type superoxide dismutase (SOD), which is antioxidant, relies on copper. Copper SOD increases with exercise training; however, this occurs without any apparent increase in dietary copper intake.[9] Free copper ions actually have

---

[5] *Hostynek JJ, Dreher F, and Maibach HI.* Human stratum corneum penetration by copper: in vivo study after occlusive and semi-occlusive application of the metal as powder. Food and chemical toxicology : an international journal published for the British Industrial Biological Research Association 44: 1539-1543, 2006; *Gorter RW, Butorac M, and Cobian EP.* Examination of the cutaneous absorption of copper after the use of copper-containing ointments. American journal of therapeutics 11: 453-458, 2004.

[6] *Campbell WW and Anderson RA.* Effects of aerobic exercise and training on the trace minerals chromium, zinc and copper. Sports medicine 4: 9-18, 1987; *Lukaski HC.* Effects of exercise training on human copper and zinc nutriture. Advances in experimental medicine and biology 258: 163-170, 1989.

[7] *Anderson RA, Polansky MM, and Bryden NA.* Acute effects on chromium, copper, zinc, and selected clinical variables in urine and serum of male runners. Biological trace element research 6: 327-336, 1984.

[8] *Zorbas YG, Charapakin KP, Kakurin VJ, Kuznetsov NK, Federov MA, and Popov VK.* Daily copper supplement effects on copper balance in trained subjects during prolonged restriction of muscular activity. Biological trace element research 69: 81-98, 1999.

[9] *Lukaski HC.* Effects of exercise training on human copper and zinc nutriture. Advances in experimental medicine and biology 258: 163-170, 1989.

the capability of having the opposite effect. In other words, copper can form highly reactive hydroxyl radicals that can initiate oxidative damage and have a deleterious effect on cell function.[10]

        c.    *Emits Ions:*  Copper, an ion itself, has the capability to actually reduce absorption of other ions (e.g., zinc). However, copper complexing with a peptide has shown to have the greatest effect on the permeability coefficient.[11]

### III. EVEN IF DEFENDANT'S STATEMENTS WERE TRUE, WHICH THEY ARE NOT, DEFENDANT FAILED TO COMPLY WITH APPLICABLE REGULATIONS

21.    Defendant claims its "proprietary PRO+IONIC copper fabric releases ions, which may help reduce the oxidants in the body and *is a natural, permanent anti-bacterial agent with skin benefits.*"  Defendant further claims its products "inhibit[] the growth of odor causing microbes."

22.    Defendant, however, failed to meet the United States Food and Drug Administration's ("FDA") and Environmental Protection Agency ("EPA") requirements regulating antimicrobial textiles and certain copper. Nowhere on Defendant's products are there any disclosures of FDA or EPA registrations or approval.

23.    Defendant has failed to take corrective measures in order to have its products comply with these requirements. As such, it was and is still making statements that misled Plaintiff and the Class. Specifically, either its products contain no antimicrobial agents or copper *or* its products have not satisfied the applicable regulations. A consumer has a right to know and consider either of the scenarios above.

---

[10] *Gaetke LM and Chow CK.* Copper toxicity, oxidative stress, and antioxidant nutrients. Toxicology 189: 147-163, 2003.

[11] *Pirot F, Millet J, Kalia YN, and Humbert P.* In vitro study of percutaneous absorption, cutaneous bioavailability and bioequivalence of zinc and copper from five topical formulations. Skin pharmacology . The official journal of the Skin Pharmacology Society 9: 259-269, 1996.

24.     Due to Defendant's own recklessness and/or negligence, Plaintiff and the Class have purchased products that have not met the proper regulatory requirements and inspections.

### IV. JURISDICTION AND VENUE

25.     This Court has jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005).  With respect to CAFA: (a) the amount in controversy exceeds the jurisdictional amount of $5,000,000.00 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. § 1332(d)(2); (b) the Class consists of thousands, and perhaps up to millions, of injured parties, and (c) some members of the Class, including Plaintiff, are citizens of States other than that of Defendant.

26.     Venue in this judicial District is proper under 28 U.S.C. § 1391(b)(1) and (2).  A substantial part of the events or omissions giving rise to the claims occurred within this District and Defendant's business headquarters are located in this District.

### V. PARTIES

27.     Plaintiff George Potzner is a resident of the State of Iowa.  Plaintiff purchased an elbow sleeve manufactured, marketed and/or sold by Defendant in approximately June 2013. Defendant represented its elbow sleeve Plaintiff purchased was made with its copper-infused fabric and would, among other things, relieve Plaintiff's aches and pains caused by his arthritis and tendonitis.[12]   Plaintiff was deceived by Defendant's misrepresentations, including its commercials, regarding the alleged benefits of its copper-infused garments.  Plaintiff did not receive the benefit of the bargain and/or suffered out-of-pocket loss as a result of Defendant's misrepresentations and improper statements and was damaged.

28.     Founded in 2010, Defendant Tommie Copper is a New York corporation with its principal place of business in Westchester County.  Defendant describes itself as "representing

---

[12] *See e.g.,* https://www.youtube.com/watch?v=KliqEk4xn7M

the next evolution of performance apparel." Defendant reportedly did approximately $25 million in sales in its first year.

## VI. CLASS ACTION ALLEGATIONS

29.     Plaintiff brings this action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure. This action satisfies the procedural requirements by Rule 23(b)(3).

30.     This suit is a class action brought on behalf of a Class defined as follows:

All persons who paid, in whole or in part, for any garment manufactured, marketed or sold by Tommie Copper that was advertised as containing copper in its fabric prior to November 2014.

Excluded from the Class is Defendant, any entity in which Defendant has a controlling interest, and Defendant's legal representatives, predecessors, successors, assigns, and employees.

31.     Alternatively to the Nationwide Class claims, Plaintiff asserts, under Federal Rule of Civil Procedure 23 a State of Iowa Class as defined as:

### *IOWA CLASS*

All persons in the State of Iowa who paid, in whole or in part, for any garment manufactured, marketed or sold by Tommie Copper that was advertised as containing copper in its fabric prior to November 2014.

32.     The classes described in this Complaint will be jointly referred to as "Class."

33.     Plaintiff reserves the right to amend or alter the above Classes.

**Numerosity**

34.     The members of each of the proposed Classes are so numerous that joinder of all members individually, in one action or otherwise, is impracticable. The precise number of Class members is unknown at this time but, based on Defendant's reported sales—$25 million in its first year—it is clear that the number greatly exceeds the number to make joinder possible.

**Commonality and Predominance**

35.      The claims of Plaintiff and the Class rely upon common questions of law and fact.

Plaintiff and all Class members are also entitled to a common form of relief, namely damages.

36.      The questions of law and fact common to the Class include but are not limited to:

a.      Whether Defendant engaged, and continues to engage, in unfair and deceptive acts and practices in connection with its marketing, advertising and sales of its garments;

b.      Whether Defendant's actions with respect to the Class violate the New York Deceptive Trade Practices Law, NY Gen. Bus. §349(a) *et seq.* and New York common law;

c.      Whether New York law applies to the proposed nationwide Class;

d.      Whether Defendant violated other consumer protection statutes and/or false advertising statutes and/or state deceptive business practices statutes;

e.      Whether Defendant knowingly mislead the Class regarding the benefits of its copper-infused garments;

f.      Whether the Class is entitled to injunctive relief;

g.      Whether Defendant was unjustly enriched; and

h.      The nature and extent of damages and other remedies to which the conduct of Defendant entitles the Class members.

**Typicality**

37.      Plaintiff's claims are typical claims of the members of the Class and the named Plaintiff is a member of the Class described herein.  Specifically, Plaintiff and all members of the Class sustained damages arising out of Defendant's wrongful course of conduct.  The harms suffered by Plaintiff are typical harms suffered by the members of the Class, and Plaintiff and other members of the Class have an interest in preventing Defendant from engaging in such conduct in the future.

**Adequacy of Representation**

38.     The named Plaintiff is willing and prepared to serve the Court and the proposed Class in a representative capacity with all obligations and duties material thereto.  Plaintiff will fairly and adequately protect the interest of the Class and have no interests adverse to or which directly conflict with the interests of the other members of the proposed Class.

39.     The interests of the named Plaintiff are co-extensive with, and not antagonistic to, those of the absent Class members.  The named Plaintiff will undertake to represent and protect the interests of absent Class members.

40.     The named Plaintiff has engaged the services of the undersigned counsel.  These counsel are experienced in complex class action litigation, will adequately prosecute this action, and will assert and protect the rights of, and otherwise represent, the named Plaintiff and absent Class members.

41.     The Class members can be notified of the class action through publication and direct mailings to address lists maintained in the usual course of business by Defendant and retail clothing stores.

42.     The questions of law and fact common to the Class as summarized above predominate over any questions affecting only individual Class members.  Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by the Class members and, as such, each of the above common questions of law and fact support class certification here.

43.     The injuries sustained by Plaintiff and the Class members flow, in each instance, from a common nucleus of operative facts—Defendant's misconduct.  In each case, Defendant

marketed and sold copper-infused garments and misled and deceived Plaintiff and the Class members concerning the recovery and pain-relieving benefits of these products.

44.     Plaintiff and the Class members have been damaged by Defendant's misconduct. Plaintiff and the Class members have paid a premium price for Defendant's copper-infused garments, which products Plaintiff would not have purchased in the absence of Defendant's marketing campaigns and deceptive scheme.

**Superiority**

45.     The class action device is superior to other available means for the fair and efficient adjudication of the claims belonging to Plaintiff and the Class members. The relief sought for each individual Class member is small given the burden and expense of individual prosecution of the potentially extensive litigation necessitated by the conduct of Defendant. Furthermore, it would be virtually impossible for the Class members to seek redress on an individual basis. Even if the Class members themselves could afford such individual litigation, the court system could not.

46.     Individual litigation of the legal and factual issues raised by Defendant's conduct would increase delay and expense to all parties and to the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale and comprehensive supervision by a single court. Given the similar nature of the Class members' claims and the absence of material differences in the state statutes and common laws upon which the Class members' claims are based, a nationwide or specific Statewide Classes will be easily managed by the Court and the parties.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF THE NEW YORK DECPETIVE TRADE PRACTICES LAW

47.    Plaintiff repeats and realleges, as if fully set forth herein at length, each and every allegation contained in the above paragraphs and further allege:

48.    Plaintiff and members of the Class are consumers.

49.    Defendant's copper-infused garments are consumer-oriented, and are marketed to consumers.

50.    At all relevant times hereto Defendant was engaged in interstate trade or commerce in the State of New York.

51.    While engaged in trade or commerce, Defendant engaged in unfair and deceptive acts and practices, as alleged in this Complaint, in violation of the New York Deceptive Trade Practices Law, NY Gen. Bus. §349, including, without limitation:

a.    Unfairly and deceptively misrepresenting the benefits of its copper-infused garments to its customers;

b.    Unfairly and deceptively advertising that its products will relieve a consumer's aches and pains;

c.    Unfairly and deceptively advertising that its products will rejuvenate and revive a consumer's body;

d.    Unfairly and deceptively stating that its products will increase oxygen transportation;

e.    Unfairly and deceptively advertising that its products will improve both muscle mobility and recovery;

f.    Unfairly and deceptively sold garments that failed to perform and/or conform to Defendant's representations and/or descriptions of its products.

52.    These acts violated NY Gen. Bus. §349 as unfair and deceptive trade practices. Other states across the Country have enacted substantially similar consumer protection statutes

which require the same or similar showings of proof, and which prevent the unlawful conduct described herein.[13]

53.     As a result of the unfair and deceptive conduct of Defendant, Plaintiff sustained damages including but not limited to the damages detailed above, incorporated herein.

54.     Pursuant to the New York law, Defendant had a statutory duty to refrain from unfair or deceptive acts or practices in the manufacture, promotion, and sale of its garments to Plaintiff and the Class members.

55.     Defendant intended that Plaintiff and the Class members rely on its materially deceptive advertisements and misrepresentations and purchase its garments as a consequence of the deceptive practices.

56.     Defendant's deceptive representations and material omissions to Plaintiff and the Class members constitute unfair and deceptive acts and practices under New York Law.

57.     Defendant engaged in wrongful conduct while at the same time obtaining, under false pretenses, significant sums of money from Plaintiff and the Class members.

58.     Plaintiff and the Class members were actually deceived by Defendant's misrepresentations.

---

[13] *See* Alaska Stat. § 45.50.471, *et seq.*, Ark. Code § 4-88-101, *et seq.*, Colo. Rev. Stat. § 6-1-105, *et seq.*, Conn. Gen. Stat. § 42-110b, *et seq.*, 6 Del. Code § 2511, *et seq.*, D.C. Code § 28-3901, *et seq.*, Fla. Stat. § 501.201, *et seq.*, Ga. Code Ann. § 10-1-393, *et seq.* and Ga. Code Ann. § 10-1-370 *et seq.*, Haw. Rev. Stat. § 480, *et seq.*, Idaho Code § 48-601, *et seq.*, 815 ILCS § 505/1, *et seq.*, Kan. Stat. § 50-623, *et seq.*, Ky. Rev. Stat. § 367.110, *et seq.*, La. Rev. Stat. § 51:1401, *et seq.*, M.G.L. c. 93A, *et seq.*, Me. Rev. Stat. Ann. tit. 5, § 205-A, *et seq.*, Md. Com. Law Code § 13-101, *et seq.*, Mich. Stat. § 445.901, *et seq.*, Minn. Stat. § 8.31, *et seq.*, Missouri Stat. § 407.010, *et seq.*, Neb. Rev. Stat. §§ 59-1601, *et seq.*, Nev. Rev. Stat. § 598.0903, *et seq.*, N.H. Rev. Stat. § 358-A:1, *et seq.*, N.J. Rev. Stat. § 56:8-1, *et seq.*, N.M. Stat. § 57-12-1, *et seq.*, N.Y. Gen. Bus. Law § 349 *et seq.*, N.D. Cent. Code § 51-15-01, *et seq.*, Ohio Rev. Code Sec. 4165.01 *et seq.*, Okla. Stat. 15 § 751, *et seq.*, Or. Rev. Stat. § 646.605, *et seq.*, R.I. Gen. Laws. § 6-13.1-1, *et seq.*, S.C. Code Laws § 39-5-10, *et seq.*, S.D. Code Laws § 37-24-1, *et seq.*, Tex. Bus. & Com. Code § 17.45, *et seq.*, 9 Vt. § 2451, *et seq.*, Va. Code § 59.1-196, *et seq.*, Wash. Rev. Code. § 19.86.010, *et seq.*, W. Va. Code § 46A-6-101, *et seq.*, Wis. Stat. Ann. § 100.18, *et seq.*

59.     As a proximate result of Defendant's misrepresentations, Plaintiff and the Class members have suffered ascertainable losses, in an amount to be determined at trial.

**COUNT II**
**BREACH OF EXPRESS WARRANTIES**

60.     Plaintiff repeats and realleges, as if fully set forth herein at length, each and every allegation contained in the above paragraphs and further allege:

61.     Defendant is in the business of selling copper-infused garments to consumers such as Plaintiff and the members of the Class, including but not limited to the kind sold to Plaintiff and the members of the Class.

62.     Defendant expressly warranted:

      a.      that its products will rejuvenate and revive a consumer's body;

      b.      that its products will relieve a consumer's aches and pains;

      c.      that its products will increase oxygen transportation;

      d.      that its products will improve both muscle mobility and recovery; and

      e.      that the copper will be absorbed by the consumer's body promoting better skin health and recovery time.

63.     The garments do not conform to these express representations.  Thus, Defendant breached its express warranties.

64.     As a direct and proximate result of the breach of said warranties, Plaintiff and the Class members suffered and/or will continue to be harmed and suffer economic loss.

65.     Plaintiff and the Class members did rely on the express warranties of the Defendant herein.

66.     These statements of express warranties were part of the basis of the bargain in the Plaintiff and the Class purchasing the garments.

67.     Defendant knew or should have known that, in fact, said representations and warranties were false, misleading and untrue.

68.     Defendant further knew Plaintiff and the Class relied on the expressed warranties when purchasing the compression garments.

69.     Defendant's conduct breached its express warranties in violation of other state express warranty laws also.

70.     Within a reasonable time after he knew or should have known of such breach, Plaintiff, on behalf of himself and members of the Class, placed Defendant on notice thereof.

71.     As a direct and proximate result of the foregoing acts and/or omissions, Plaintiff and the Class members have suffered damages entitling them to compensatory damages, equitable and declaratory relief, punitive damages, costs and reasonable attorneys' fees.

**COUNT III**
**NEGLIGENT MISREPRESENTATION**

72.     Plaintiff repeats and realleges, as if fully set forth herein at length, each and every allegation contained in the above paragraphs and further allege:

73.     Defendant had a duty to disclose to Plaintiff and members of the Class the actual quality and characteristics of its garments.

74.     During the Class period, Defendant negligently and/or carelessly misrepresented, omitted and concealed from consumers material facts relating to the quality and characteristics of its garments, including the alleged physical benefits from the copper-infused fabric. Defendant made such false and misleading statements and omissions on its website and in its advertisements and packaging with the intention of inducing Plaintiff and members of the Class to purchase its garments.

75.     Defendant was careless in ascertaining the truth of its representations in that it knew or should have known that the represented benefits would not be realized by Plaintiff and the Class.

76.     Plaintiff and members of the Class were unaware of the falsity of Defendant's misrepresentations and omissions and, as a result, justifiably relied on them in deciding to purchase the garments. Had Plaintiff and members of the Class been aware of the true nature of the garments, he would not have purchased them at the premium price offered by Defendant.

## COUNT IV
## UNJUST ENRICHMENT

77.     Plaintiff repeats and realleges, as if fully set forth herein at length, each and every allegation contained in the above paragraphs and further allege:

78.     At all relevant times, Defendant designed, manufactured, produced, marketed and/or sold the garments.

79.     Defendant benefitted from its unlawful acts by receiving payments for the sales of the garments.  Defendant knew that the garments did not offer all the benefits it advertised in order to entice consumers to purchase its products.

80.     Plaintiff and the Class members conferred non-gratuitous benefits upon Defendant by paying for the garments.

81.     Defendant appreciated or had knowledge of the non-gratuitous benefits conferred upon them by Plaintiff and the Class members.

82.     Defendant accepted or retained the non-gratuitous benefits conferred by Plaintiff and the Class members with full knowledge that, as a result of Defendant's wrongdoing, Plaintiff and the Class members were not receiving products of the high quality, nature, fitness, or value as reasonable consumers expected.  Allowing Defendant to retain the non-gratuitous benefits

Plaintiff and the Class members conferred would be unjust and inequitable under these circumstances.

83.     Because Defendant's retention of the non-gratuitous benefits conferred by Plaintiff and the Class members would be unjust and inequitable, Plaintiff and the Class members are entitled to and hereby seek disgorgement and restitution of Defendant's wrongful profits, revenue, and benefits in a manner established by the Court.

**COUNT V**
**DECLARATORY RELIEF PURSUANT TO 28 U.S.C. 2201, et seq**

84.     Plaintiff repeats and realleges, as if fully set forth herein at length, each and every allegation contained in the above paragraphs and further allege:

85.     As set forth above, Plaintiff contends that Defendant engaged in unfair and deceptive business activities, whereas Defendant maintains its conduct has been proper.

86.     As such, an actual controversy exists between Plaintiff and the Class and Defendant concerning the parties' rights and duties with respect to Defendant's business practices concerning its compression garments.

**COUNT VII**
**VIOLATION OF THE PRIVATE RIGHT OF ACTION FOR CONSUMER FRAUDS ACT, IOWA CODE CHAPTER 714H**

87.     Plaintiff repeats and realleges, as if fully set forth herein at length, each and every allegation contained in the above paragraphs and further alleges:

88.     Defendant has engaged in unfair, deceptive, untrue and misleading business practices in violation of Iowa law.

89.     Defendant has violated this statutory prohibition against engaging in unlawful acts and practices by, *inter alia*, making the representations and omissions of material facts with the "intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise,

misrepresentation, concealment, suppression, or omission" in connection with the sale of its garments. Iowa Code Ann. § 714H.3.

90.    Pursuant to Iowa law, Defendant had a statutory duty to refrain from unfair or deceptive acts or practices in the manufacture, promotion, and sale of the copper-infused garments to Plaintiff and the Class members.

91.    In connection with the sale of its consumer merchandise, Defendant engaged in unfair and deceptive acts and practices, as alleged in this Complaint, including, without limitation:

a.    Unfairly and deceptively misrepresenting the benefits of its copper-infused garments to its customers;

b.    Unfairly and deceptively advertising that its products will rejuvenate and revive a consumer's body;

c.    Unfairly and deceptively advertising that its products will relieve a consumer's aches and pains;

d.    Unfairly and deceptively stating that its products will increase oxygen transportation;

e.    Unfairly and deceptively advertising that its products will improve both muscle mobility and recovery;

f.    Unfairly and deceptively sold garments that failed to perform and/or conform to Defendant's representations and/or descriptions of its products.

92.    As a result of the unfair and deceptive conduct of Defendant, Plaintiff sustained damages including but not limited to the damages detailed above, incorporated herein.

93.    Pursuant to the Iowa law, Defendant had a statutory duty to refrain from unfair or deceptive acts or practices in the manufacture, promotion, and sale of the garments to Plaintiff Potzner and the Class members.

94.     Defendant intended that Plaintiff and the Class members rely on its materially deceptive advertisements and misrepresentations and purchase its garments as a consequence of the deceptive practices.

95.     Defendant's deceptive representations and material omissions to Plaintiff and the Class members constitute unfair and deceptive acts and practices under Iowa Law.

96.     Defendant engaged in wrongful conduct while at the same time obtaining, under false pretenses, significant sums of money from Plaintiff and the Class members.

97.     Plaintiff and the Class members were actually deceived by Defendant's misrepresentations.

98.     As a proximate result of Defendant's misrepresentations, Plaintiff and the Class members have suffered ascertainable losses, in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the Class members request that the Court enter an order or judgment against Defendant including the following:

a.      Certification of the action as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure; appointment of Plaintiff as the Class Representatives and appointment of his counsel as Class Counsel;

b.      Damages in the amount of monies paid for the garments;

c.      Actual damages, statutory damages, punitive or treble damages, and such other relief as provided by the statutes cited herein;

d.      Grant restitution to Plaintiff and members of the Class and require Defendant to disgorge its ill-gotten gains;

e.      Pre-judgment and post-judgment interest on such monetary relief;

f.      Other appropriate injunctive relief;

g.      The costs of bringing this suit, including reasonable attorneys' fees; and

h.      All other relief to which Plaintiff and the Class members may be entitled at law or in equity.

## JURY DEMAND

Plaintiff hereby demands trial by jury on his own behalf, and on behalf of the absent Class members, on all issues and claims presented above.

Dated:  April 22 , 2015

CUNEO GILBERT & LADUCA, LLP



Charles J. LaDuca (3975927)
Taylor Asen (5101738)
16 Court Street, Suite 1012
Brooklyn, New York 11241
Telephone: 202.789.3960
Facsimile:  202.789.1813
charles@cuneolaw.com
tasen@cuneolaw.com

CUNEO GILBERT & LADUCA, LLP
Michael J. Flannery
7733 Forsyth Boulevard, Suite 1675
St. Louis, MO  63105
Telephone: 314.226.1015
Facsimile:  202.789.1813
mflannery@cuneolaw.com

LOCKRIDGE GRINDAL NAUEN P.L.L.P.
Robert K. Shelquist (#21310X)
Rebecca A. Peterson (#392663)
100 South Washington Ave., Suite 2200
Minneapolis, MN 55401
Telephone:  612.339.6900
Facsimile:  612.339.0981
rashelquist@locklaw.com
rapeterson@locklaw.com

HUDSON MALLANEY SHINDLER & ANDERSON PC
J. Barton Goplerud
Brian O. Marty
5015 Grand Ridge Drive, Suite 100
West Des Moines, Iowa 50265
Telephone:  515.223.4567
Facsimile:  515.223.8887
jbgoplerud@hudsonlaw.net
bomarty@hudsonlaw.net

///

MIRABELLA LAW, LLC
Erica Mirabella
132 Boylston Street
Boston, Massachusetts 02116
Telephone: 617.580.8270
Facsimile: 617.583.1905
erica@mirabellallc.com

*Attorneys for Plaintiff*